## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
www.flsb.uscourts.gov

| | |
|---|---|
| In re: | Chapter 7 |
| Daisy Borges, | Case No. 19-10396-AJC |
| Debtor. _____/ | |

### CREDITOR MICHAEL ALVAREZ'S MOTION TO REOPEN BANKRUPTCY CASE AND SET DEADLINE TO FILE COMPLAINT OBJECTING TO DISCHARGEABILITY OF A DEBT PURSUANT TO 11 U.S.C. § 523

Creditor Michael Alvarez seeks an Order from the Court reopening this bankruptcy case and setting a deadline for him to file a complaint objecting to dischargeability of a pre-petition debt owed to him by the Debtor.

In the Debtor's prior bankruptcy filed in 2009, Alvarez filed a complaint objecting to dischargeability of his state court judgment that was settled in which the Debtor agreed to make monthly payments over time to Alvarez and that such debt, in the event of non-payment, was non-dischargeable. The Debtor breached this agreement and avoided making any payments to Alvarez over a six-year period. Finally, when the Debtor could no longer use her family members as an excuse to avoid garnishment of her wages, she filed this bankruptcy case, but either by design or outright sloppiness, failed to properly schedule Alvarez's debt.

Recently, Alvarez became aware of this bankruptcy filing and now seeks to reopen this case, to require the Debtor to properly schedule his debt and provide Alvarez sufficient time to file a complaint objecting to the dischargeability of his debt. Put simply, the Debtor defrauded Alvarez, and thereafter, breached a settlement agreement that required her to make modest monthly payments to him over time.

### I. FACTUAL BACKGROUND

1. The relationship of the parties goes back to 2009.

2. Alvarez is a young man that suffers from certain learning disabilities. Although these learning disabilities have placed hurdles before him, he is hardworking and determined to lead an independent life.

3. In 2009, Alvarez (a teenager at that time), was befriended by the Debtor (who was in her 40s). The Debtor feigned interest in Alvarez on an emotional level. The Debtor was aware of Alvarez's learning disabilities and utilized this knowledge to manipulate and take advantage of him for her own financial gain.

4. The Debtor convinced Alvarez to apply for credit at two furniture stores and buy her several thousand dollars of home furniture with the promise that she would repay Alvarez. She also convinced Alvarez not to tell his parents about these purchases.

5. By chance, Alvarez's father noticed in the mail billing invoices relating to the furniture purchases. Alvarez, who worked at a carwash, had no meaningful ability to repay these debts.

6. Alvarez and his family had, and continue to have, limited financial means. Nonetheless, they scrambled to put together the necessary funds to repay the furniture companies and then confronted the Debtor and demand she pay Alvarez back.

7. Of course the Debtor never paid a cent to Alvarez and forced him to file a suit *pro se* in state court to collect.

8. Alvarez ultimately obtained a judgment in the amount of $8,006.48 against the Debtor and was in the process of collecting on the judgment.

9. But the Debtor sought to stymie those collection efforts. She filed for bankruptcy, Case No. 09-21573-AJC, seeking to discharge Alvarez's debt.

10. Determined to stop the Debtor's fraud, Alvarez filed a *pro se* adversary proceeding against the Debtor, Adv. Case No. 09-2019-AJC, seeking to avoid dischargeability of his judgment.

11. Thereafter, undersigned counsel agreed to represent Alvarez on a *pro bono* basis.

12. An amended complaint was filed against the Debtor objecting to the dischargeability of Alvarez's debt pursuant to 11 U.S.C. § 523.

13. Prior to the case going to trial, the Debtor settled and agreed to repay Alvarez over time. *See* ECF No. 75 in Adv. Case No. 09-2019. Specifically, the Debtor agreed to repay Alvarez $60 a month with the possibility of not having to repay the debt until 2018. *Id.*

14. Per Section 2.10 of the parties' stipulation of settlement, the Debtor agreed that any breach of the repayment terms rendered all amount due and owing at that time to Alvarez non-dischargeable:

> 2.10. **Remedies; Exception from Discharge.** If Zavala fails to cure the default, then the full amount of the Judgment Amount minus the total amount of all of the payments made by Zavala under this Stipulation is immediately due and payable, without further demand or other notice, and this amount is deemed excepted from dischargeability pursuant to Section 523(a)(2)(A) of the Bankruptcy Code ("Non-Dischargeable Judgment"). The Non-Dischargeable Judgment shall accrue interest at the rate of eight (8) percent per annum. The Parties further agree that Alvarez may exercise in accordance with this Stipulation and applicable law any and all rights at law or in equity to collect upon the Non-Dischargeable Judgment.

15. The parties' agreement required that all notices or payments initially be sent to Alvarez at the following address:

Michael Alvarez

    P.O. Box 160164
    Miami, Florida 33116

16.    In the event any party changed their address, they were required to provide in writing an updated address for notice purposes. *Id.*

17.    For a period of time, the Debtor made her required monthly payments to Alvarez.

18.    On August 10, 2012, undersigned counsel advised the Debtor in writing to send her monthly payments to a **new** address for Alvarez:

    Michael Alvarez
    P.O. Box 162005
    Miami, Florida 33116

*See* Exhibit 1.

19.    The Debtor complied with this request and began mailing payments to Alvarez at this new mailing address.

20.    In December 2013, the Debtor defaulted under the terms of the settlement agreement.

21.    That put in motion Alvarez's multi-year effort to garnish the Debtor's wages. Each time Alvarez attempted to garnish the Debtor's wages, she sought and successfully obtained a head of household exemption.

22.    Important to those garnishment proceedings, Alvarez's mailing address was and remained as follows:

    Michael Alvarez
    P.O. Box 162005
    Miami, Florida 33116

23.    By the late 2010s, the Debtor's ability to utilize the head of household exemption had run its course and she would be forced to repay Alvarez either voluntarily or by garnishment. At that point, she apparently filed this bankruptcy case.

24. Importantly though, the Debtor, with actual knowledge of Alvarez's correct mailing address, nonetheless scheduled Alvarez at his **defunct old** mailing address:

> Michael Alvarez
> P.O. Box 160164
> Miami, FL 33116

25. But that's not all. The Debtor, with actual knowledge of undersigned's new firm and new mailing address – as evidenced by undersigned counsel's deposition notice filed in the state court garnishment case in November 2017 – elected to schedule a defunct, and in any event, incorrect mailing address for undersigned counsel as well:

> Jonathan Feldman
> 200 S. Biscayne Blvd.
> Miami, FL 33131[1]

26. In January 2020, Alvarez attempted yet again to garnish the Debtor's wages. By this time, the Debtor could no longer use her grown up daughters as an excuse to avoid paying Alvarez.

27. A continuing writ of garnishment was issued by the state court in early February 2020.

28. Only at that point, did Alvarez find about this bankruptcy case. Specifically, on February 17, 2020 counsel for the Debtor filed a suggestion of bankruptcy that identified this case and that it had been filed over a year before.

29. Neither Alvarez nor undersigned counsel had ever received any notice of this bankruptcy case before February 17, 2020. And by this point in time, the deadline to object to dischargeability had run and the Debtor received her discharge.

---

[1] By failing to include the suite number in a building with hundreds of tenants, the Debtor ensured that any notice of this bankruptcy case would not make it to undersigned counsel's prior law firm.

## II. RELIEF REQUESTED

Section 350(b) of the Bankruptcy Code allows the Court to reopen a case "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). A case may be reopened on the request of parties in interest other than the debtor. *Fed. R. Bankr. P.* 5010.

The general rule in a no-asset Chapter 7 case is that once the debtor obtains a discharge under 11 U.S.C. § 727, most prepetition debts — scheduled or omitted — are automatically discharged, because there is no date by which a proof of claim must be filed and unsecured creditors receive no distribution. There is no requirement in such cases that a claim be scheduled in order to be discharged. *Zirnhelt v. Madaj (In re Madaj)*, 149 F.3d 467, 472 (6th Cir.1998). Accordingly, "reopening the case merely to schedule an omitted debt is for all practical purposes a useless gesture." *Id.* at 468 (internal citation omitted).

However, when an omitted debt is of a kind described in 11 U.S.C. § 523(a)(2), (4), or (6), a creditor may challenge its dischargeability:

> [An omitted debt is not discharged] if such debt is of a kind specified in paragraph (2), (4), or (6) of this subsection, [and not scheduled in time to allow a] timely filing of a proof of claim and timely request for a determination of dischargeability of such debt under one of such paragraphs, unless such creditor had notice or actual knowledge of the case in time for such timely filing and request[.]

11 U.S.C. § 523(a)(3)(B); *see also Kowalski v. Romano (In re Romano),* 59 Fed.Appx. 709, 713 (6th Cir.2003) ("[i]n the context of failing to schedule a creditor, nondischargeability can arise only under § 523(a)(3)"); *In re Karamitsos,* 88 B.R. 122, 123 (Bankr.S.D.Tex.1988) (a debt "is either discharged or excepted from discharge based on a judicial analysis of [ ] § 523(a)(3)").

Finally, in terms of notice, "[i]t is well settled that if a debtor lists incorrectly the name or address of a creditor in the required schedules, so as to cause the creditor not to receive notice, that creditor's debt has not been 'duly scheduled' . . . and if the creditor has no actual knowledge of the

bankruptcy proceeding, the creditor's debt is not dischargeable." *In re Adams*, 734 F.2d 1094, 1098 (5th Cir.1984).  To that end, a debtor is required to review his or her own books and records in ascertaining a creditor's current address.  *See In re Brooklyn Hosp. Ctr. & Caledonian Health Ctr.*, 513 B.R. 810, 2014 Bankr. LEXIS 3406, at *18 (Bankr. E.D.N.Y. Aug. 8, 2014); *In re Gelman*, 5 B.R. 230, 232 (Bankr. S.D. Fla. 1980) ("Where an incorrect address is scheduled, and the debtor could have ascertained the correct address, or failed to exercise reasonable care and diligence in ascertaining the address, the debt is not discharged unless the creditor had actual, timely, knowledge.") (internal citations omitted).

Based on the above legal framework, this case should be reopened and Alvarez allowed to protect his rights against Alvarez.  *First*, Alvarez has standing to request this case be reopened pursuant to § 350(b) because he is a creditor of the Debtor.

*Second*, Alvarez's debt is of the kind described under § 523(a)(2)(A).  Per the parties' stipulation, the Debtor agreed that in the event of default, her debt to Alvarez would be non-dischargeable pursuant to such section of the Bankruptcy Code. But beyond that, the *nature* of Alvarez's underlying debt against the Debtor sounds in fraud.  *Archer v. Warner*, 538 U.S. 314 (2003) (court looks beyond parties' settlement agreement to determine whether the liability associated with the agreement is in fact non-dischargeable pursuant to § 523).  As set forth in the amended complaint in Alvarez's adversary proceeding against the Debtor in 2009, the Debtor manipulated and took advantage of Alvarez to obtain thousands of dollars in furniture with no ability or intention to repay Alvarez.

*Third*, Alvarez and undersigned counsel had no notice of the Debtor's bankruptcy filing. As the Debtor's bankruptcy schedules readily acknowledge, the mailing address utilized for both Alvarez and counsel are incorrect even though the Debtor, through the exercise of the most basic

care and diligence, could have listed the correct address for either Alvarez or counsel. Put simply, the Debtor has known for years Alvarez's correct mailing address. She has also known at a minimum, the correct prior mailing address for undersigned counsel. Nonetheless, the Debtor utilized neither address and waited over a year before filing her suggestion of bankruptcy in the state court garnishment proceedings. At best, the Debtor's actions were sloppy and careless; viewed more cynically, the Debtor is continuing in her bad faith conduct to avoid paying Alvarez.

### III.   CONCLUSION

Our judicial system is predicated on due process. That was not provided to Alvarez when the Debtor filed this case and obtained the benefit of a discharge without giving Alvarez notice to object to the dischargeability of the debt owing to him based on the Debtor's fraudulent conduct.

**WHEREFORE**, Alvarez requests the Court enter an Order reopening this case and providing Alvarez sufficient time to commence an adversary proceeding objecting to the dischargeability of the debt owing to him by the Debtor and granting such further relief the Court deems just and proper.

Dated: April 22, 2020.                    Respectfully submitted,

/s/ *Jonathan S. Feldman*
Jonathan S. Feldman, Esq. (FBN 12682)
jfeldman@pbyalaw.com
**PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT, P.L.**
200 South Andrews Avenue, Suite 600
Fort Lauderdale, Florida 33301
T: 954-566-7117 / F: 954-566-7115

### Certificate of Service

I certify that on the date provided below a true and correct copy of the foregoing document is being served CM/ECF upon all parties of record.

/s/ *Jonathan S. Feldman*



# Meland · Russin · Budwick
ATTORNEYS AT LAW

JONATHAN S. FELDMAN
jfeldman@melandrussin.com

August 10, 2012

**VIA U.S. MAIL**

Daisy Zavala
15400 S.W. 81st Circle Lane
Apt. 106
Miami, FL 33193

      ***RE:  Michael S. Alvarez v. Daisy Zavala et al.***
            ***Case No. 09-2019-BKC-AJC***

Dear Ms. Zavala:

    Going forward, please mail all monthly payments regarding the above case to the following address: Michael S. Alvarez, P.O. Box 162005, Miami, Florida 33116.

    Should you have any questions, do not hesitate to contact me.

                                Sincerely,

                                Jonathan S. Feldman /gs

JSF/gs

**EXHIBIT 1**

{Firm Clients/4193/4193-1/01139506.DOC.}

Meland Russin & Budwick, P.A.
3000 Southeast Financial Center, 200 South Biscayne Boulevard, Miami, Florida 33131 · P 305-358-6363 · F 305-358-1221 · melandrussin.com